# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

```
SOUTHERN DISTRICT OF MISSISSIPPI
          FILED
       NOV 24 2020
       ARTHUR JOHNSTON
BY_____ DEPUTY
```

Corla Jackson

**Plaintiff**

Case Number: 1:20cv355 HSO-JCG

V.

The Siegel Group LLC.,
Jason Weber, and John Does

**Defendants**

## COMPLAINT

**Come Now,** Corla Jackson files this _____ Complaint based upon the following grounds under this court's jurisdiction.

**Rule 9. Pleading Special Matters, § 732.301 Due Process, Federal Rule (60b)** and to have **Diversity Jurisdiction**, there are two requirements and U.S. Constitution and Federal Statutes, in addition to,

**BRIEF:** The Defendants did not serve the Plaintiff Corla Jackson (**Due Process**) or an (Eviction Notice) by any rule of law, prior to conducting their eviction action and calling Gautier Police Department on (November 20, 2020) to have her removed from her Studio Apartment. After, **Gautier Police Department arrived they ask Corla Jackson was she served a Notice and she stated No, at that point he said it was a Civil Matter now**.

Jason Weber, The Siegel Group's Manager, called the Gautier Police on a Single Black Woman on a wrongful eviction actions under false pretense. This was a **hate crime act, retaliation** and **more, after he was issued the CDC Declaration that halted all evictions until December 31, 2020**. Corla Jackson was harassed by Jason Weber during the Covid-19 Pandemic knowing Evictions

were halted nationwide, prior to calling the police **without an Eviction Notice or Due Process as required by the rule of law.**
From the beginning, Corla Jackson paid rent when she moved in amount of around **($175.00)** a week, the prior kept going up to over **($300.00)** a week multiple time, during the pandemic. **When Corla Jackson questioned the <u>excess fees</u> and <u>more</u> as well as the CDC Declarations and Cars Act Programs that protected her, she was harassed and threatened and more.**

In addition to the above, **the manager (Jason Weber) of** (The Siegel Group LLC., stated that (Siegel Select) was a (Hotel and Motel) and that the CDC Order Declaration signed by CDC on (September 4, 2020). Siegel Select was not a Casino, Hotels or Motels, when Corla Jackson moved into her Studio Apartment on (September 20, 2019).

**Discrimination:** Federal law prohibits discrimination in housing and the rental market. See Civil Rights Act of 1866 & 42 U.S. Code, Chapter 45, Federal Fair Housing Act. Neithamer v Brenneman Property Services Inc (1999) is a leading case regarding a landlord discriminating against a potential tenant. The court in that case created a test (shown below) for when a landlord engages in discrimination of a potential tenant.

**U.S. Constitution and Federal Statutes**
- 42 U.S.C. § 1982 - Civil Rights Act of 1866
- 42 U.S.C., Chapter 45 - Federal Fair Housing Act
- CRS Annotated Constitution

**Federal Agency Regulations**
- 24 C.F.R. - Housing and Urban Development

**State Material - State Statutes**
- Uniform Residential Landlord Tenant Act
- State Property Law Statutes


**The Amount In Damages exceeds $75,000.** Diversity jurisdiction is codified in Title 28, Section 1332 of the United States Code (28 U.S.C. § 1332(a)). Corporate Citizenship In determining whether there is diversity jurisdiction, a corporation that is a party is considered to be a citizen of both its state of incorporation and its principal place of business.

The **Constitution states only one command twice**. The **Fifth Amendment** says to the federal government that no one shall be "**deprived of life, liberty or property without due process of law.**" The Fourteenth Amendment, ratified in 1868, uses the same eleven words, called the Due Process Clause, to describe a legal obligation of all states. These words have as their central promise an assurance that all levels of American government must operate within the law ("legality") and provide fair procedures.

**Tenant Rights: Discrimination to Termination:** In Mississippi, landlords are not allowed to discriminate based on protected characteristics such as race, familial status, or disability. Acts of discrimination include refusing to rent to someone, offering discriminatory terms or conditions, and misrepresenting the availability of a unit based on a protected trait.

What is a Wrongful Eviction?

The rules that apply to landlords and tenants can vary depending on what state you live in (and sometimes may even depend on your town or municipality). However, the rules generally prohibit certain types of evictions, such as:

**Self-Help Evictions:** Self-help evictions generally happen when a landlord takes back the rental property without using the eviction process (and in some cases may amount to landlord harassment).

Even if a tenant has not paid rent, has destroyed property, or has violated terms in the lease agreement, a landlord may only legally remove the tenant by following the established state eviction procedures.

**Retaliatory Evictions:** It is also illegal in most states for a landlord to engage in retaliatory eviction (i.e., evicting a tenant as retaliation). The landlord cannot evict you for exercising your legal rights. **42 U.S. Code § 1982.Property rights of citizens** and **42 U.S. Code SUBCHAPTER II—PREVENTION OF INTIMIDATION.**

**Landlord-tenant law governs the rental of commercial and residential property.** It is composed primarily of state statutes and common law. A number of states have based their statutory law on either the Uniform Residential Landlord And Tenant Act (URLTA) or the Model Residential Landlord-Tenant Code. Further, federal statutory law may be relevant during times of national/regional emergencies and in preventing forms of discrimination.

**Title 89 - Real and Personal Property: Chapter 7 - Landlord and Tenant**

**§ 89-7-23. Notice to terminate tenancy.** Universal Citation: MS Code § 89-7-23 (2018): **Notice to quit shall be necessary only where the term is not to expire at a fixed time.** In all cases in which a notice is required to be given by the landlord or tenant to determine a tenancy, two (2) months' notice, in writing, shall be given where the holding is from year to year, and one (1) month's notice shall be given where the holding is by the half-year or quarter-year; and where the letting is by the month or by the week, one (1) week's notice, in writing, shall be given. This section shall not apply to rental agreements governed by the Residential Landlord and Tenant Act.

**§ 89-8-19. Length of term of tenancy; notice to terminate tenancy; exception to notice requirement.** (1) Unless the rental agreement fixes a definite term a tenancy shall be week to week in case of a tenant who pays weekly rent, and in all other cases month to month. (2) The landlord or the tenant may terminate a week-to-week tenancy by written notice given to the other at least seven (7) days prior to the termination date. (3) The landlord or the tenant may terminate a month-to-month tenancy by a written notice given to the other at least thirty (30) days prior to the termination date.

**AGENCY: Centers for Disease Control and Prevention (CDC), Department of Health and Human Services (HHS). ACTION: Agency Order:** SUMMARY: The Centers for Disease Control and Prevention (CDC), located within the Department of Health and Human Services (HHS) announces the issuance of an Order under Section 361 of the Public Health Service Act to temporarily halt residential evictions to prevent the further spread of COVID-19. **DATES:** This **Order** is effective (**September 4, 2020**) through (**December 31, 2020**).

**FOR FURTHER INFORMATION CONTACT**: Nina Witkofsky, Acting Chief of Staff, Centers for Disease Control and Prevention, 1600 Clifton Road NE, MS H21-10, Atlanta, GA 30329; Telephone: 404-639-7000; Email: *cdcregulations@cdc.gov*. **Action Order** is effective (**September 4, 2020**) through (**December 31, 2020**).

# History

**The Siegel Group, Inc.** is an American diversified company based in Paradise, Nevada and Studio City, California. It owns and operates boutique hotels, hotel casinos, restaurants, **apartments**, bars, office buildings, retail franchises and shopping centers.

**The Siegel Group LLC**

The Siegel Group owned the Gold Spike Hotel and Casino in downtown Las Vegas from February 2008 until selling it in April 2013 to Tony Hsieh's Downtown Project. In June 2015, The Siegel Group acquired a property in Arizona from Legacy Suites for $8.3 million. In May 2019, the group acquired two buildings in Las Vegas for $8.35 million and plans to turn them into a hub for eateries

**Properties**

**Apartments**

- 36 flexible stay apartment communities in Nevada, South Carolina, Arizona, Texas, Louisiana, Mississippi and New Mexico, operated by The Siegel Group under the Siegel Suites brand.
- 13 extended stay communities in Nevada, New Mexico, Louisiana, Alabama, Mississippi, Tennessee and Arizona, under the Siegel Select brand.

**Hotel/casinos**

- Siegel Slots and Suites: 5011 E. Craig Rd, Las Vegas, Nevada, near Nellis Air Force Base.

**Boutique hotels**

- The Artisan Hotel: 1501 W. Sahara Ave, Las Vegas, Nevada.

**Shopping centers / office buildings**

- Siegel Plaza: 700 E. Naples, Las Vegas, Nevada, near McCarran Airport
- Laurel Plaza: 12080 Ventura Place, Studio City, California
- Las Vegas office building: 3790 Paradise Rd, Las Vegas, Nevada Retail

- Pinkbox Doughnuts

# CARES Act Eviction Protection

The CARES Act, signed into law **Mar. 27, 2020**, provided 120 days of eviction relief for tenants in **federally-backed housing**, which has since expired. Specifically, you could not be served with an eviction notice until July 25, 2020. **Furthermore, the notice had to give you 30 days to leave the property (Aug. 24, 2020).** During the **120-day eviction moratorium**, your **landlord could not charge you late fees, penalties, or other charges for paying your rent late.** It is important to note that the eviction moratorium did not relieve anyone of the obligation to pay rent. It merely prevented your landlord from evicting you during that period for late payment.

**There was broad agreement among policymakers that a second round of stimulus checks should be issued. However, disagreements on other issues prevented the passage of new direct payment legislation as of August 2020.**

**Expanded Unemployment Benefits**

After CARES Act provisions offering extended unemployment benefits expired, an executive order providing additional assistance went into effect. Under the order, the federal government was to supply $300 toward an additional $400 per week unemployment benefit, with the rest paid for by state governments.3 However, many legal and practical questions continued to delay the implementation of the order as of August 2020.

Under the CARES Act, eligibility for unemployment insurance was expanded if you lost your job during the coronavirus pandemic. After regular state benefits expired, the unemployed were eligible to receive up to an additional 13 weeks of benefits. Furthermore, they were eligible for another $600 per week.

The government also expanded these unemployment benefits to include people not ordinarily eligible, such as independent contractors, part-time employees, or participants in the gig economy.

## Fannie Mae Disaster Response Network

Fannie Mae's Disaster Response Network has published a guide for renters affected by the coronavirus (COVID-19). Through the network, HUD-approved housing advisors provide:

- Personalized recovery assessment and action plan
- Help working with your housing situation
- Financial coaching and budgeting
- Access to Clearpoint's Project Porchlight Online tools and resources
- Ongoing check-ins to help ensure a successful recovery

**However,** several federal, state, and local acts still protected some renters from evictions as of August 2020.  **Rent forbearance is available through some of the same programs that have suspended evictions**.  Various social service agencies, states, and local governments offer additional rent assistance.

**AGENCY: Centers for Disease Control and Prevention (CDC), Department of Health and Human Services (HHS). ACTION: Agency Order**: SUMMARY: The Centers for Disease Control and Prevention (CDC), located within the Department of Health and Human Services (HHS) announces the issuance of an Order under Section 361 of the Public Health Service Act to temporarily halt residential evictions to prevent the further spread of COVID-19. **DATES:** This Order is effective (**September 4, 2020**) through (**December 31, 2020**). **FOR FURTHER INFORMATION CONTACT**: Nina Witkofsky, Acting Chief of Staff, Centers for Disease Control and Prevention, 1600 Clifton Road NE, MS H21-10, Atlanta, GA 30329; Telephone: 404-639-7000; Email: *cdcregulations@cdc.gov*.



**POLICE DEPARTMENT**
**CITY OF GAUTIER**
Gautier, Mississippi

OFFICER _Walker #51_

CASE # _____

3329 Highway 90
Gautier, MS 39553

**228-497-2486**
Fax 228-497-8018

**BRIEF:** The Defendants did not serve the Plaintiff Corla Jackson (**Due Process**) or an (Eviction Notice) by any rule of law, prior to conducting their eviction action and calling Gautier Police Department on (November 20, 2020) to have her removed from her Studio Apartment. After, **Gautier Police Department arrived they ask Corla Jackson was she served a Notice and she stated No, at that point he said it was a Civil Matter now.**

**Landlord-tenant law governs the rental of commercial and residential property.** It is composed primarily of state statutes and common law. A number of states have based their statutory law on either the Uniform Residential Landlord And Tenant Act (URLTA) or the Model Residential Landlord-Tenant Code. Further, federal statutory law may be relevant during times of national/regional emergencies and in preventing forms of discrimination.

**Title 89 - Real and Personal Property: Chapter 7 - Landlord and Tenant**

**§ 89-7-23. Notice to terminate tenancy.** Universal Citation: MS Code § 89-7-23 (2018): **Notice to quit shall be necessary only where the term is not to expire at a fixed time.** In all cases in which a notice is required to be given by the landlord or tenant to determine a tenancy, two (2) months' notice, in writing, shall be given where the holding is from year to year, and one (1) month's notice shall be given

where the holding is by the half-year or quarter-year; and where the letting is by the month or by the week, one (1) week's notice, in writing, shall be given. This section shall not apply to rental agreements governed by the Residential Landlord and Tenant Act.

**§ 89-8-19. Length of term of tenancy; notice to terminate tenancy; exception to notice requirement.** (1) Unless the rental agreement fixes a definite term a tenancy shall be week to week in case of a tenant who pays weekly rent, and in all other cases month to month. (2) The landlord or the tenant may terminate a week-to-week tenancy by written notice given to the other at least seven (7) days prior to the termination date. (3) The landlord or the tenant may terminate a month-to-month tenancy by a written notice given to the other at least thirty (30) days prior to the termination date.

**Discrimination:** Federal law prohibits discrimination in housing and the rental market. See Civil Rights Act of 1866 & 42 U.S. Code, Chapter 45, Federal Fair Housing Act. Neithamer v Brenneman Property Services Inc (1999) is a leading case regarding a landlord discriminating against a potential tenant. The court in that case created a test (shown below) for when a landlord engages in discrimination of a potential tenant.

**U.S. Constitution and Federal Statutes**
- 42 U.S.C. § 1982 - Civil Rights Act of 1866
- 42 U.S.C., Chapter 45 - Federal Fair Housing Act
- CRS Annotated Constitution

**Federal Agency Regulations**
- 24 C.F.R. - Housing and Urban Development

**State Material - State Statutes**
- Uniform Residential Landlord Tenant Act
- State Property Law Statutes

**FOR FURTHER INFORMATION CONTACT**: Nina Witkofsky, Acting Chief of Staff, Centers for Disease Control and Prevention, 1600 Clifton Road NE, MS H21-10, Atlanta, GA 30329; Telephone: 404-639-7000; Email: *cdcregulations@cdc.gov*. **Action Order** is effective (**September 4, 2020**) through (**December 31, 2020**).

## This Court Has Jurisdiction To Here This Complaint

**Rule 9. Pleading Special Matters**

**Diversity Jurisdiction:** Diversity jurisdiction is one of two methods for a federal court to have federal subject-matter jurisdiction over a case (the other being federal question jurisdiction). Jurisdictional Amount Requirement the jurisdictional amount exceeds $75,000. Diversity jurisdiction is codified in Title 28, Section 1332 of the United States Code (28 U.S.C. § 1332(a)). Corporate Citizenship: In determining whether there is diversity jurisdiction, a corporation that is a party is considered to be a citizen of both its state of incorporation and its principal place of business. **Trusts:** In Americold Realty Trust v. ConAgra Foods, Inc, 577 U.S. __ (2016), the Supreme Court held that for the purposes of diversity jurisdiction, the citizenship of a trust is based on the citizenship of its members, which includes the beneficiaries as well as the trustees.

**There Was No Eviction Notice or Due Process: § 732.301 Due process, prior to calling Gautier Police Department on an wrongful eviction action (November 20, 2020). STATED CLAIM AMOUNT REQUESTED: 10 Million Dollars.**

*Corla Jackson 11/24/2020*
Corla Jackson
3491 Dolphin Drive
Gautier, Mississippi. 39553
Phone: 251.554.1785
corlareevesjackson@gmail.com

## CERTIFICATE OF SERVICE

I certify that on **November 24, 2020,** a true and correct copy of this motion was served to each person listed below.

**C.C. COPIES TO:**

**The Siegel Group Nevada, Inc.**
3790 Paradise Rd., Ste. 250
Las Vegas, NV 89169
Phone: 702.947.8330
Fax: 702.947.8318

**InCorp Services, Inc.**
302 Enterprise Dr. STE A, Ste. 250
Oxford, MS 38655

**Jason Weber**
3491 Dolphin Drive
Gautier, Mississippi 39553
Phone: 228.497.1722
Fax: 702.724.3959

*Corla Jackson 11/24/2020*

Corla Jackson
3491 Dolphin Drive #141
Gautier, Mississippi 39553
Phone: 251.554.1785
corlareevesjackson@gmail.com